IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01448-PAB-BNB

DAVID O. POWELL,

    Plaintiff,

v.

STEVE GREEN, Warden, Buena Vista Correctional Facility, et al.,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 52] filed by Magistrate Judge Boyd N. Boland on August 16, 2011. Magistrate Judge Boland recommends that the Court grant defendants' motions to dismiss [Docket Nos. 28, 36, 40]. The Recommendation advised plaintiff that he had the right to file objections to the Recommendation within fourteen days of service of the Recommendation. Plaintiff filed timely objections on August 30, 2011 [Docket No. 55]. Therefore, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In light of plaintiff's pro se status, the Court construes plaintiff's filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

At all relevant times, plaintiff was an inmate at the Buena Vista Correctional Facility ("BVCF") run by the Colorado Department of Corrections ("CDOC"). In the present action, plaintiff sues various BVCF and CDOC employees pursuant to 42

U.S.C. § 1983, asserting four claims for relief.  In his first and third claims for relief, plaintiff contends that, upon his arrival at BVCF on December 15, 2007, he was subjected to unsanitary conditions resulting in him suffering from multiple Methicillin-Resistant Staphylococcus Aureus ("MRSA") and Staphylococcus Aureus ("Staph") infections between February 2008 and June 2009.  The Court will analyze these claims pursuant to the Eighth Amendment.[1]  Plaintiff alleges in his second claim that, upon being infected, he received inadequate medical care.  Plaintiff also contends that defendants retaliated against him for complaining about the unsanitary conditions and his medical treatment.

### A. Official Capacity Claims

As an initial matter, the Recommendation correctly concluded that plaintiff may

---

[1]As the Recommendation points out, it appears that plaintiff may be invoking both the Eighth Amendment and substantive due process when alleging unsanitary prison conditions.  *See, e.g.*, Docket No. 11 at 16, ¶ 40 (alleging that defendants "caused atypical and significant hardship to plaintiff"); Docket No. 55 at 7, ¶ 29 (arguing in his objections that he "has stated a prima facia [sic] case" arising under a "danger creation" theory of liability).  The Court concludes that plaintiff's prison condition claims should be analyzed by reference to the Eighth Amendment.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) ("not[ing] that where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process.") (citation omitted); *Thompson v. Milyard*, No. 07-cv-02132-WYD-CBS, 2008 WL 4097531, at *4 (D. Colo. Sep. 2, 2008) ("Here, because Plaintiff's claims can be properly analyzed under the Fourth and Eighth Amendments, it is unnecessary to apply a substantive due process analysis to Plaintiff's claims."); *cf. Rodriguez v. Mercer County*, 2010 WL 920153, at *7 (D.N.J. March 9, 2010) ("Here, Plaintiff is complaining of allegedly dangerous conditions in the place of his confinement.  The 'state-created danger' theory is not applicable to such a setting.  Instead, any liability arises out of the 'special relationship' between the state and Plaintiff as a result of taking him into custody.  To the extent Plaintiff was a convicted and sentenced prisoner at the time of the acts complained of, he is protected by the Eighth Amendment proscription against cruel and unusual punishment[.]").

not proceed with his "claims against the defendants in their official capacities for retroactive monetary relief." Docket No. 52 at 6; *see Henderson v. Jones*, 378 F. App'x 808, 809 (10th Cir. 2010) ("[T]he district court correctly concluded that to the extent that [the plaintiff] has raised claims for monetary damages against the defendants in their official capacities, such claims are barred by the Eleventh Amendment."). The Court may not exercise subject matter jurisdiction over such claims. *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000).

B. **Statute of Limitations**

The Recommendation found that plaintiff's first and third claims for relief, both of which arise from plaintiff's allegations of unsanitary conditions, should be dismissed as untimely. The Court agrees. "State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Therefore, in this case, plaintiff's § 1983 claims are subject to a two-year statute of limitations. *See* Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and "regardless of the theory upon which suit is brought . . . shall be commenced within two years."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (finding that "§ 1983 claims are best characterized as personal injury actions and we therefore apply" the State of Colorado's two-year statute of limitations) (citation omitted). Federal law, however, "governs the time of accrual of § 1983 claims." *Beck*, 195 F.3d at 557. Plaintiff's § 1983 claim "accrued when [he] knew or should have known that his constitutional rights had

3

allegedly been violated." *Parkhurst v. Lampert*, 264 F. App'x 748, 749 (10th Cir. 2008) (citing *Beck*, 195 F.3d at 557).

In his first and third claims for relief, plaintiff alleges that various defendants were deliberately indifferent to the unsanitary conditions which resulted in his being infected with MRSA and Staph. Plaintiff further alleges that "[d]efendants' have deprived plaintiff of basic human needs, humane conditions of confinement, and adequate medical care, since his arrival in December 2007." Docket No. 11 at 7, ¶ 1; *see id.* at 9, ¶ 3 (alleging that, throughout the period of time plaintiff was housed at BVCF, he was "exposed to unsanitary and hazardous conditions"). In his objections, plaintiff contends that, "[u]pon his arrival at [BVCF] in December 2007, it was abundantly clear that the prison fell below reasonable standards for humane living conditions." Docket No. 55 at 12, ¶ 46. It appears, therefore, that plaintiff's first and third claims for relief may have accrued as early as December 2007.

Plaintiff contends, however, that "it was not until plaintiff was first exposed to MRSA and Staph viruses and their harmful consequences and side effects" that he "fully comprehend[ed] the seriousness of the repeated exposure to MRSA and Staph on his current and future health." Docket No. 55 at 12, ¶ 46. Plaintiff alleges that the dates of his MRSA and Staph infections were February 26, March 27, and November 3, 2008, as well as March 24 and June 7, 2009. Docket No. 11 at 13, ¶ 21. Assuming the dates of infection trigger the statute, the Court concludes that plaintiff's first and third claims accrued no later than February 26, 2008 when plaintiff "was first exposed to

4

MRSA and Staph viruses and their harmful consequences and side effects."[2]  Plaintiff, however, did not initiate this case until June 15, 2010.  As a result, plaintiff's first and third claims for relief, which arise out of the alleged failure to provide "reasonably safe conditions for prisoners," Docket No. 11 at 17; *see also* Docket No. 11 at 9, are barred by the applicable two-year statute of limitations.  Similarly, claim two, to the extent it alleges inadequate medical care on February 26 and March 27, 2008, is also barred by the statute of limitations.[3]

### C. Pleading Adequacy

The Court concludes that the remaining portion of plaintiff's second claim and plaintiff's fourth claim for relief fail to state plausible claims for relief.  In support of his second claim, plaintiff takes issue with the specific medical care he received for his infections as well as the overall policies and guidelines implemented by defendants to treat MRSA and Staph at BVCF.  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's

---

[2] Even if the Court were to look to the date of plaintiff's second infection, when plaintiff would have "fully comprehend[ed] the seriousness of the repeated exposure," plaintiff would have known or should have known all the facts supporting his claims that the sanitary conditions at BCVF were inadequate no later than March 27, 2008.

[3] Plaintiff asks that the statutory period be tolled for the time it took him to exhaust his administrative remedies.  *See* Docket No. 35 at 10-11; *see also* Docket No. 55 at 13.  Plaintiff contends that the process concluded on November 5, 2009, but offers no explanation for why it took more than seven additional months for him to initiate this action.  Therefore, he has failed to provide any basis for tolling the limitations period. *See Braxton v. Zavaras*, 614 F.3d 1156, 1162 (10th Cir. 2010) ("Even if the administrative exhaustion requirement constitutes an 'extraordinary circumstance' preventing plaintiffs from filing suit, plaintiffs still must 'make[ ] good faith efforts to pursue the claims when possible.'  Thus, whether plaintiffs are entitled to equitable tolling depends on whether they diligently pursued their claims following the exhaustion of their administrative remedies.") (citations omitted and alteration in original).

policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citations and internal quotations omitted). To the extent plaintiff's complaint contends that the guidelines and policies implemented were inadequate, he provides no information regarding the nature of the policy or how it caused harm to him. He implies that the policy includes a directive to segregate infected prisoners from the general population.[4] As for plaintiff's allegations regarding being placed in an unsanitary cell upon being segregated, it is unclear whether he believes that was done consistently with, or in contravention of, the guidelines and policies implemented by defendants. *See* Docket No. 55 at 10, ¶ 41 ("The medical treatment provided by defendants included placement in a punitive segregation cell that had not been cleaned and sanitized."); *see also* Docket No. 55 at 9, ¶ 37 (arguing that defendants failed "to provide a sanitary environment, free of hazardous toxins, materials, [and] disease").

As for plaintiff's claims against the defendants in their individual capacities, he fails to adequately "explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Plaintiff alleges that the inadequacy of the medical facilities could prevent prompt treatment of life threatening symptoms of his infections, but does not allege that defendants in fact failed to promptly respond to his

---

[4]This would appear to contradict plaintiff's later allegation that various defendants have made no effort to "mitigate the spread of MRSA or Staph." Docket No. 11 at 15, ¶ 35.

five infections. Furthermore, he acknowledges that the "prison has an infirmary with a medical cell, as well as access to a prison medical facility." Docket No. 11 at 14, ¶ 27. There are, however, no allegations that support the inference that any of the individual defendants failed to reasonably respond to plaintiff's medical needs. *See Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) ("A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition."); *Dougherty v. Kansas*, 2008 WL 2906505, at *3 (D. Kan. July 24, 2008) ("a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered 'substantial harm' from the delay"; lifelong handicap, permanent loss, or considerable pain amounts to substantial harm). Plaintiff admits that he received treatment for his infections. *See* Docket No. 11 at 16, ¶ 36. While plaintiff disagrees with the adequacy of that treatment, such a disagreement over appropriate medical care is insufficient to support an Eighth Amendment claim. *See Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993) ("a difference of opinion with the medical staff . . . does not rise to the level of a constitutional violation").

Moreover, plaintiff does not allege which defendants were made aware of the unsanitary conditions in the cells where he was housed so as to support an inference of deliberate indifference on their part. *See Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (stating that, to succeed on an Eighth Amendment deliberate indifference claim, plaintiff must show that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it"). This failure is highlighted by plaintiff's objections to the Recommendation's findings on

qualified immunity. Plaintiff simply repeats his conclusory statements about alleged violations by "defendants." See Docket No. 55 at 5-6. By so lumping defendants together, plaintiff has failed to make "clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original). Therefore, plaintiff has also failed to overcome defendants' assertion of the qualified immunity defense. *See id.* at 1249 ("Although we apply 'the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally,' complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'") (citations and footnote omitted).

Finally, in regard to the fourth claim for relief, plaintiff similarly does not allege a policy or custom that has resulted in retaliatory treatment or specifically identify how each defendant individually violated his rights. Therefore, the fourth claim for relief must also be dismissed.

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 52] is ACCEPTED. It is further

**ORDERED** that the defendants' motions to dismiss [Docket Nos. 28, 36, 40] are GRANTED. This case is dismissed in its entirety.

DATED September 26, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge